(14 Misc. Rep. 620.)

GLEASON v. BLANC et al.

(Supreme Court, Special Term, Kings County. December, 1895.)

ELECTIONS—FALSE RETURNS BY INSPECTORS—MANDAMUS TO CORRECT.

Laws 1892, c. 680, §§ 115, 117, requires the inspectors of election to file in the office of the county clerk a statement of the total number of votes cast and the number thereof cast for each candidate, to deliver a certified copy thereof to a supervisor of the city, and to file another certified copy with the city clerk. *Held*, that where a false copy of such statement was filed with a city clerk, who, accepting the same as true, issued a certificate of election to the person apparently receiving the most votes, the candidate in fact elected was entitled to a peremptory writ of mandamus, requiring the inspectors to reconvene and file with the city clerk a true copy of the original statement, and also requiring the city clerk to recanvass the returns, following the true statement.

Application by Patrick J. Gleason for a peremptory writ of mandamus to Henry J. Blanc and others, as inspectors of election, and to the city clerk of Long Island City. Granted.

Jesse Johnson, for the motion.

W. E. Stewart, opposed.

GAYNOR, J. In the recent general election Strong, Madden, Gleason, and Woodruff were candidates for the office of mayor of Long Island City, in Queens county. By the election law the inspectors of election in each election district of the said city were required to make and sign a written statement of the canvass of the votes, showing, among other particulars, the total number of votes cast for each office, and the number thereof cast for each person voted for (Laws 1892, c. 680, § 115), to file such original statement in the office of the county clerk, to deliver a certified copy thereof to a supervisor of the said city, and to file another certified copy thereof with the city clerk (Id. § 117). It needs to be noted that an original statement and two copies are thus provided for. The original is to be filed in the county clerk's office, and is necessarily the sole authentication of the result of the canvass. The two copies provided for have no validity, except as they are true copies. In this case the said original sets forth that in the First election district of the Fourth ward the total vote for mayor was 300, of which Strong received 147 votes, Madden 109, Gleason 68, and Woodruff 6. The certified copy given to the supervisor is correct. The paper filed with the city clerk as a certified copy is false, and upon its face appears to be intentionally false and fraudulent. It gives the total vote as 328 (instead of 300), the vote for Strong as 123 (instead of 147), that for Madden as 147 (instead of 109), that for Gleason 52 (instead of 68); and no vote for Woodruff. There is no clerical error here, but a change of every number. It cannot, therefore, be said that the inspectors complied at all with the requirement to file a certified copy of the original with the city clerk. They omitted their duty, and filed, instead, a false paper. This court is asked to issue a peremptory writ of mandamus requiring them to reconvene and perform their duty by making, certifying, and filing with the

city clerk a true copy of the original which is on file in the county clerk's office, and also requiring the city clerk, upon receiving the same, to recanvass the returns in his office, rejecting the said false statement and following the true one. The city clerk is the canvassing officer of Long Island City by law, and he hastily made the canvass after election, accepting the said false copy as true. It also appears, before me, by the original statement of canvass of the Second district of the First ward, and by the certified copies delivered to the supervisor and city clerk, that Madden received in that district 125 votes. In making his said canvass, however, the city clerk chose to read these figures as 175, although he thereby added 50 more votes than were cast in that district. The result of his canvass showed a plurality for Madden, whereas the true returns elect Gleason. He issued a certificate of election to Madden, who speedily took the oath of office. The foregoing facts are not questioned. On the contrary, they were conceded to be the facts by the respondents upon the argument. Beyond a dispute or a pretense, except a criminal one, Gleason was elected. It is contended, however, that in the face of such iniquity this court is powerless to afford present redress, but must await the slow progress of an action by Gleason to oust Madden from the office after he takes possession the 1st of January next. It is pointed out that there is no specific provision of the election law prescribing a writ of mandamus for such a case. There does not need to be. This court has the general power to compel the performance of official duty. In respect of the false statement filed with the city clerk by the inspectors of the First district of the Fourth ward, the case is the same as though they had filed no statement at all. The one case is as much a complete failure to perform the ministerial duty required of them as is the other, and such a failure is ground for ordering a writ of mandamus to compel the official duty to be done. People v. Schiellein, 95 N. Y. 124. The suggestion that the filing of a true certified statement by the inspectors of election, and the making of a true canvass by the city clerk, resulting in a certificate of election to Gleason, will do him no good, because he will still have to bring an action to oust Madden, who holds a false certificate of election, and has qualified, is without foundation. Madden is not yet in possession of the office, and if Gleason gets his certificate as the result of obedience to the writ of mandamus, he, and not Madden, will be entitled to take the office on the 1st of January, and it will be for the latter to go to the expense and trouble of an action to get possession, if he be so disposed. And if this were not so, the least that could be said would be that the writ of mandamus would be the means of putting Gleason on even terms with his adversary, by enabling him to qualify and present himself, and try to get first possession; and that alone would prevent the writ from being futile, and not to be granted for that reason. The suggestion to the contrary in the case of People v. Supervisors of Greene Co., 12 Barb. 217, has not been deemed the law. The motion is granted.

Motion granted.