THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* GEORGE B. McCLELLAN, Respondent, Impleaded with Another.

1. APPEAL — BILL OF PARTICULARS — WHEN WITHIN DISCRETION OF SUPREME COURT — WHEN ORDER GRANTING BILL AND PRECLUDING PLAINTIFF FROM GIVING EVIDENCE OF PARTICULARS NOT FURNISHED, REVIEWABLE IN COURT OF APPEALS. While the granting or denial of a motion for a bill of particulars ordinarily rests within the sound discretion of the Supreme Court, which discretion is not reviewable by the Court of Appeals, yet there is a limit to such discretion, and where an order

requires a plaintiff to furnish the particulars of evidence, which it is not within his power to furnish, or precludes him from giving lawful and proper evidence upon the trial because he has failed to specify in advance what such evidence will disclose, a question of law is presented which is reviewable in the Court of Appeals.

2. QUO WARRANTO — WHEN BALLOTS CAST AT ELECTION LAWFUL AND PROPER EVIDENCE — PRELIMINARY EVIDENCE REQUIRED PRIOR TO OPENING OF BALLOT BOXES. In an action of quo warranto, the ballots voted are lawful and proper evidence upon the question as to which candidate received a majority of the votes lawfully cast at the election, and where such ballots are contained in the ballot boxes which have been kept in the custody of the board of elections as required by the Election Law (L. 1896, ch. 909, § 111), neither party can properly be excluded from availing himself of such evidence upon the trial; provided, however, that preliminary evidence is submitted, showing that the ballots have been preserved in the boxes inviolate, and this evidence must be of such a character as to satisfy the trial court, in the first instance, that they have been so preserved before admitting them to be opened and the contents received in evidence, and, finally, to satisfy the jury of such preservation; but beyond that no further conditions are required, it being unnecessary to produce preliminary evidence tending to show misconduct, error, omission or fraud in the counting or canvassing of the votes.

3. QUO WARRANTO — BILL OF PARTICULARS — ERRONEOUS ORDER PRECLUDING PLAINTIFF FROM GIVING EVIDENCE OF ILLEGAL ACTS NOT SPECIFIED IN BILL OF PARTICULARS. In an action of quo warranto brought by the attorney-general to determine the title to the office of the mayor of the city of New York, the defendant obtained an order directing the attorney-general to specify the particulars of the errors, miscounts and illegal acts alleged in the complaint, upon which the attorney-general served a bill of particulars stating some of the particulars required and alleging that further particulars could only be had from an inspection of the ballots contained in the ballot boxes used at the election; the defendant then moved the court for an order directing the attorney-general to furnish a further bill of particulars of designated allegations of the complaint, complying with the prior order for a bill of particulars, and in default of such information that he be precluded from giving any evidence of any misconduct or miscount of votes in any election district; this motion was opposed by the attorney-general, who made an affidavit in substance stating that the ballot boxes were in the custody of the board of elections of the city of New York, kept under lock and key, and neither he nor any other person had been permitted to open the same or make an examination of their contents, and that consequently, he could not furnish the information called for. The Special Term denied the motion, but on review by the Appellate Division the order of the Special Term was reversed and the motion granted to the extent of

precluding the plaintiff from giving any evidence of the allegations contained in the complaint, except with regard to the election districts specified in the schedule of the bill of particulars served by the attorney-general. *Held,* that the order precluding the attorney-general from giving evidence of the miscount of votes in election districts in which he was not able to specify the particulars required, without an opportunity to inspect the ballots contained in the boxes, presents a question of law which the Court of Appeals has the power to review, which is not a review in advance of rulings that may be made by the trial court in the admission and rejection of evidence, but is the review of an order of the Appellate Division by which the trial court is required to exclude and prohibit the attorney-general from giving in evidence the contents of the ballot boxes referred to in the order; and *held,* that such order, being based upon the erroneous proposition that, before the admission of the contents of the boxes in evidence, proof *aliunde* must be given of misconduct on the part of the election officers, is, therefore, without legal foundation and must be reversed.

*People* v. *McClellan,* 124 App. Div. 215 reversed.

(Argued March 2, 1908; decided March 6, 1908.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered February 18, 1908, which reversed an order of Special Term denying a motion for a further bill of particulars.

The nature of the action, the facts, so far as material, and the questions certified, are stated in the opinion.

*William S. Jackson,* Attorney-General (*Clarence J. Shearn* and *Charles A. Dolson* of counsel), for appellant. In an action in the nature of quo warranto, brought by the People to obtain a judgment of ouster from an elective office, the ballots themselves are common-law evidence, if identified, and constitute, if they have been preserved inviolate, the highest and best evidence of the count, and are admissible to impeach and overthrow the returns and certificate of election without any other or " preliminary " evidence of fraud, error, omission or mistake in the counting and canvass of the votes. (L. 1896, ch. 909, § 111; *People ex rel. Brink* v. *Way,* 179 N. Y. 174; *People ex rel. Dailey* v. *Livingston,* 79 N. Y. 279; *People* v. *Holden,* 28 Cal. 123; *People ex rel. Judson* v. *Thatcher,*

55 N. Y. 525.) Irrespective of the matter of preliminary proof, as a matter of law, the defendant was not entitled to the order precluding evidence of fraud in the districts not specified in the bill of particulars. (*People* v. *Tweed*, 5 Hun, 353.)

*Eugene Lamb Richards, Jr.*, and *G. D. B. Hasbrouck* for respondent. Question No. 1 does not involve a question of law, and this court should, therefore, refuse to answer it. (*Witkowski* v. *Paramore*, 93 N. Y. 470; *Dwight* v. *G. L. Ins. Co.*, 84 N. Y. 505; *Tilton* v. *Beecher*, 59 N. Y. 176; *Matter of Coatesworth*, 160 N. Y. 114; *Schenck* v. *Barnes*, 156 N. Y. 316; *Matter of Robinson*, 160 N. Y. 448; *Hearst* v. *Shea*, 156 N. Y. 169; *Steinway* v. *Von Bernuth*, 167 N. Y. 498; *Coatesworth* v. *L. V. R. R. Co.*, 156 N. Y. 451.) The order of preclusion was justified, and if question No. 1 is to be answered, it must be answered in the affirmative. (*People ex rel. Swinburne* v. *Nolan*, 63 How. Pr. 271; McCrary on Elections [4th ed.], § 435; *Mann* v. *Cassidy*, 1 Brewster [Penn.], 1; *Whitney* v. *Blackburn*, 17 Ore. 564; *Bayer* v. *Teague*, 106 N. C. 571; *Loomis* v. *Jackson*, 6 W. Va. 613; *People ex rel. Dorflinger* v. *Hilmantel*, 21 Wis. 566.) The return or statement of canvass by the inspectors of election in any election district is *prima facie* evidence of the votes declared therein, and such certificate or statement can be impeached and the ballots recounted only upon preliminary evidence indicating mistake, error, omission or fraud in the counting or canvassing of the votes or in the returns; therefore, question No. 3 should be answered in the affirmative. (*People ex rel. Dailey* v. *Livingston*, 79 N. Y. 279; *People* v. *Thatcher*, 55 N. Y. 525; *Powell* v. *Holman*, 50 Ark. 85; *Fishback* v. *Bramel*, 44 Pac. Rep. 840; *Spidle* v. *Mac-Cracken*, 45 Kans. 356; *O'Gorman* v. *Richter*, 31 Minn. 25; *Jones* v. *State*, 112 Ind. 193; *People* v. *Cicott*, 16 Mich. 324; *Owens* v. *State*, 64 Tex. 500; *Ewing* v. *Tilly*, 43 Penn. St. 384.) The determination of the Appellate Division was right in that it narrowed the issue to the things which are

really to be litigated, and that it eliminated the things about which there should be no substantial controversy. (*A. I. Co. v. C. & O. R. R. Co.*, 69 App. Div. 87; *Gross* v. *Connor*, 114 App. Div. 32; *Rhodes* v. *Adams*, 113 App. Div. 306; *Dietz* v. *Leber*, 33 App. Div. 565.)

HAIGHT, J.   This action is in the nature of a quo warranto brought by the attorney-general to oust the defendant George B. McClellan from the office of mayor of the city of New York and to seat William R. Hearst as such mayor, upon the ground that at the election of mayor in that city in the fall of 1905 the defendant Hearst was elected as such mayor instead of the defendant McClellan.

After issue had been joined in the action an order was obtained upon the application of the defendant McClellan, requiring the attorney-general to furnish him with a bill of particulars of the allegations of subdivisions 4, 5, 6, 7 and 8 of the complaint, in substance, particularly specifying each election district in which ballots lawfully marked and cast for Hearst were counted as having been cast for McClellan, stating particularly the number of such ballots in each election district and whether straight or split ballots; and also specifying particularly each election district in which marked, void and illegal ballots were counted for McClellan, stating the number in each district; also specifying each district in which men were permitted to vote for McClellan who had not theretofore been registered, the hour of their voting, their names and address, and those who voted more than once at such election; also each election district in which inspectors failed and omitted to count ballots that had been lawfully cast for Hearst and had failed and omitted to enter upon and embody in the returns of the votes cast for such office, such votes, specifying the number and whether straight or split ballots; and also particularly specifying the election districts in which votes were by the inspectors of election entered upon and embodied in the returns of the votes cast for McClellan which had not, in fact, been cast at all, specifying particularly the number,

whether straight or split, etc.   Thereupon, and upon December 19, 1907, the attorney-general caused to be served upon the defendant McClellan a verified bill of particulars, specifying a large number of election districts and stating the number of votes in each that he claimed had been improperly counted for McClellan, and then stated, in substance, that he was unable to give any other or further particulars of the allegations of the complaint, for the reason that the full and complete information concerning the allegations could only be had from an inspection of the ballots contained in the several ballot boxes used at such election.   Thereupon the defendant McClellan moved the court for an order directing the attorney-general to furnish a further bill of particulars of the allegations contained in subdivisions 4, 5, 7 and 8 of the complaint, complying with the prior order for a bill of particulars by specifying the number of votes miscounted in each election district of Kings county, and particularly and separately what votes were miscounted by acts alleged in subdivision 4, and what votes were miscounted by acts alleged in subdivision 7, and what votes were miscounted by acts alleged in subdivision 8, specifying whether upon split or straight ballots, and that he be required to give further particulars in regard to the allegations contained in subdivision 5 of the complaint, specifying whether the votes alleged to have been miscounted were upon split or straight ballots, and in default of such information that he be precluded from giving any evidence of any misconduct or miscount of votes in any election district, and for such other and further relief in the premises as may be just.

This motion was opposed by the attorney-general, who made an affidavit in substance stating that the ballot boxes were in the custody of the board of elections of the city of New York, kept under lock and key, and neither he nor any other person had been permitted to open the same or make an examination of their contents, and that consequently, he could not furnish the information called for.   Thereupon the Special Term denied the motion, but on review by the Appel-

late Division the order of the Special Term was reversed and the motion granted to the extent of precluding the plaintiff from giving any evidence of the allegations contained in subdivision 6 of the complaint or of any fraud, error, omission or mistake as charged in subdivisions 4, 5, 7 and 8 of the complaint except with regard to the election districts specified in the schedule of the bill of particulars served by the attorney-general. Permission was then granted to appeal to this court, and the following questions were certified:

1. "Whether, upon the trial of this action, the plaintiff should be precluded from giving any evidence of fraud, error, omission or mistake as charged in the paragraphs or subdivisions IV, V, VII and VIII of the amended complaint and supplemental complaint, except with regard to the election districts specified in the bill of particulars."

2. "Whether upon the trial of this action to test the title of the defendant McClellan to an elective office, if it shall appear that the said defendant had been declared elected by the board of canvassers and had received a certificate of election regular in form, the burden of impeaching the certificate of election, by showing fraud, error or omission in the counting, returning or canvass of the votes will rest upon the plaintiff."

3. "Whether in such an action any ballot box may be opened and its contents recounted without preliminary evidence tending to show some misconduct, error, omission or fraud in the counting or canvassing of the vote or in the returns."

Upon the argument of this appeal it was conceded by the appellant's counsel that the second question should be answered in the affirmative. Our review, therefore, is limited to a consideration of the first and third questions certified.

It has been suggested that the ordering of a bill of particulars rests in the sound discretion of the Special Term and Appellate Division of the Supreme Court and that such discretion is not reviewable by this court; and that this court ought not to determine in advance the rulings that the trial

court should make with reference to the admission or rejection of evidence. The office of a bill of particulars is to apprise a party of the particulars of the claim that he will be called upon to meet upon the trial, so that he may be able to prepare his defense and procure the attendance of such witnesses as he may be able to produce upon the subject. It is not usual, however, to require a party to give the particulars of the evidence of which he proposes to avail himself upon a trial. It is doubtless true that the giving or the withholding of a bill of particulars ordinarily rests in the discretion of the Supreme Court and that discretion cannot be reviewed in this court; but there is a limit to such discretion. It cannot require a plaintiff to furnish the particulars of evidence which is not within his power to furnish or preclude him from giving lawful and proper evidence upon the trial, by reason of his inability to specify in advance what such evidence will disclose. A party may have an intimation in advance as to how a witness will testify upon the trial, but he cannot be certain until after the witness has been placed under oath and his testimony taken.

In this case the attorney-general, as we have seen, has sworn that the ballots cast at the election in question were contained in boxes in the custody of the board of elections, kept under lock and key and that no person had been permitted to open and examine their contents, and, therefore, he was unable to give information as to the facts that would be disclosed upon such an examination. The fact that the custody of these boxes, after the close of election, is given to the board of elections and that it is made the duty of that board to preserve and keep the boxes and their contents inviolate, is a provision of the statute, and, therefore, the statement of the attorney-general with reference thereto is not open to question. By referring to the order for the amended bill of particulars requiring compliance with the original order, it is quite apparent that most, if not all, of the information which he is required to furnish, in addition to that furnished by him in the bill of particulars, depends upon the

information which is contained in the boxes and can only be furnished upon an examination of their contents. We, therefore, are of the opinion that the order precluding the attorney-general from giving any evidence of the miscount of votes in the election districts in which he was not able to specify the particulars required by the bill of particulars without an opportunity to inspect the ballots contained in the boxes, presents a question of law which this court has the power to determine. It is not a review in advance of rulings that may be made by the trial court in the admission and rejection of evidence; but it is the review of an order of the Appellate Division by which the trial court is required to exclude and prohibit the attorney-general from giving in evidence the contents of the ballot boxes referred to in the order. The order of the Appellate Division is based on the proposition that before the admission of the contents of the boxes in evidence, proof *aliunde* must be given of misconduct on the part of the election officers, of which, if it existed, the Appellate Division might consider the attorney-general necessarily had knowledge. If, on the other hand, no such preliminary proof is required, there was no foundation on which the order can stand.

This case, as we have seen, has been brought for the purpose of determining the question as to whether McClellan or Hearst was elected mayor at the election in question. That depends upon the determination of the question as to which received a majority of the votes of the electors lawfully cast at such election. The ballots so cast become lawful and proper evidence, and they are contained in the boxes in the custody of the board of elections, and it is our conclusion that neither party can properly be excluded from the right of availing himself of this evidence upon the trial.

A further question is presented as to whether the ballot boxes may be opened and their contents inspected without preliminary evidence tending to show misconduct, error, omission or fraud in the counting or the canvassing of the votes. The statute provides that upon the completion of the canvass

by the board of inspectors of the ballots cast, "the ballots voted, except the void and protested ballots, shall be replaced in the box from which they were taken, together with a statement as to the number of such ballots so replaced. Each such box shall be securely locked and sealed, and shall be deposited with the officer or board furnishing such boxes. They shall be preserved inviolate for six months after such election and may be opened and their contents examined upon the order of the Supreme Court or a justice thereof, or a county judge of such county, and at the expiration of such time the ballots may be disposed of in the discretion of the officer or board having charge of them." (§ 111 of the Election Law, L. 1896, ch. 909.)

In the case of *People ex rel. Brink* v. *Way* (179 N. Y. 174) it was held that mandamus would not lie for opening of the boxes and to compel a recount of the ballots by a board of town canvassers after the ballots had been returned to the boxes for preservation under the provisions of the statute; that the provisions of the statute with reference to the preservation of the ballots and the opening of the boxes by the Supreme Court or a judge thereof or a county judge was intended for use in criminal proceedings and to supply evidence in actions in the nature of quo warranto for the purpose of establishing title to office. PARKER, Ch. J., in delivering the opinion of the court, says : "The object of the preservation of the ballots and the granting of the power to the court to order an examination of them would seem to be that it furnishes a further check upon the perpetration of fraud by local boards of canvassers. It accomplishes this necessarily because the canvassers know that for six months after the canvass the evidence of how the people voted is to be preserved in such form that it may be used not only to deprive possibly the intended beneficiary of the fruit of his office but also that it may be used against the canvassers in criminal proceedings * * * the evidence thus preserved is the best and most conclusive in proceedings in the nature of quo warranto to try the title to public office, a proceeding formerly

embarrassed by the fact that the ballots had been destroyed.
\* \* \* This section is not intended to confer upon a judge
the power to capriciously order ballot boxes to be opened and
examined nor will it be so construed by the courts. The
power is conferred to the end that it may be used in judicial
proceedings pending or about to be commenced."

In *Matter of Hearst* v. *Woelper* (183 N. Y. 274) this ques-
tion was again considered by Judge GRAY, in which it was held
that a mandamus would not lie for the opening of the boxes
for a recount by the election inspectors, but the purpose of
the preservation of the ballots was, that it furnished the best
evidence in proceedings in the nature of quo warranto to try
the title to office. And in *Matter of Metz* v. *Maddox* (189
N. Y. 460) CULLEN, Ch. J., says : " It is plain that the con-
test for the present office will largely, if not principally, pre-
sent questions of fact. The count of the votes now in one of the
boxes may differ radically·from the vote returned by the can-
vassers. The proof given may tend to show that the box has
been preserved inviolate and, therefore, justify the admission
of its contents in evidence. On the other hand, there may
be evidence tending to show that the box was or could have
been tampered with, and there may also be testimony of the
election inspectors and canvassers that on the night of the
election the ballots in the box were exactly as returned by
them in their statement of the count. The vital issue will
then be what was the true count of the ballots on election
night, and the exclusive determination of that question will
belong to a jury."

We are aware that in *People ex rel. Dailey* v. *Livingston*
(79 N. Y. 279) the trial court ruled that the contents of a box
containing ballots should not be allowed to be opened and the
ballots recounted without preliminary evidence tending to
show some misconduct, omission or error in the returns, but
inasmuch as this ruling was against the successful party upon
the trial it was not brought up for review in this court. If
such preliminary evidence is contemplated by our present
Election Law, then a preliminary issue arises with reference to

every box containing ballots which is sought to be opened and the contents received in evidence. It may be that the inspectors and watchers could be called to give oral testimony as to what they discovered in the count and in the making of the returns on election night, from which it might be found that there was misconduct or omission of duty on the part of those charged with the duty of canvassing the ballots. This evidence may be rebutted by persons present tending to show that there was no misconduct or omission of duty, thus raising a distinct issue of fact with reference to each box that may be offered to be opened and its contents examined, thereby unduly increasing the burdens of the trial and extending it indefinitely. Whether there were errors in the returns or an omission to count the ballots for the candidate for whom they were cast are questions which can be determined from the ballots themselves when the boxes are opened and the ballots counted. We fail, therefore, to see the necessity for the preliminary proof referred to, and are of the opinion that the statute does not contemplate the necessity of producing such evidence preliminary to the right of either party to the action to avail himself of the evidence which the boxes contain. It is true that preliminary evidence must be submitted showing that the ballots have been preserved in the boxes inviolate, as was said by Chief Judge Cullen in the *Metz* case, to which we have already referred; and that such evidence must be of such a character as to satisfy the trial court in the first instance that they have been so preserved before admitting them to be opened and the contents received in evidence, and finally to satisfy the jury of such preservation. But beyond that, we are of the opinion that no conditions are imposed upon the right of the court upon a trial, either to determine the right of a party to an office or his guilt or innocence in a criminal action, at the instance of either party, to open a ballot box and to admit the contents in evidence.

It may be different where the boxes are sought to be opened under other circumstances than a trial of an action; for, as

we have seen, from our reference to the *Brink* case, the statute was not intended to confer upon a judge out of court the power to capriciously order ballot boxes to be opened and examined, unless it was to the end that they may be used in judicial proceedings *pending or about to be commenced.*

The purpose of the statute requiring a preservation of the ballots, as we have seen, is that they may be used as evidence upon a criminal prosecution or in an action to determine which candidate was elected to office. It may be that the evidence furnished by the ballots would not become conclusive, for that would depend upon the question whether they had been preserved inviolate and as to whether they had been cast by persons who were qualified voters in that election district. But that they may become important evidence, upon which a jury may act in determining the question presented, there can be no doubt.

We conclude, therefore, that the order of the Appellate Division should be reversed and that of the Special Term affirmed, with costs, and that the first question certified should be answered in the negative and the third in the affirmative.

GRAY, J. (dissenting). As to the first question certified, the order of the Appellate Division was, plainly, right in confining the plaintiffs' proof as to errors, or frauds, in the counting of ballots to those election districts, which were specified in the schedule of their bill of particulars. The complaint alleges, in the most general terms, that in every election district in the city ballots cast for Hearst were counted for McClellan; that illegally marked ballots were counted for McClellan; that ballots cast for Hearst were not. counted; that votes were returned for McClellan which had not been cast at all; that men had been allowed to vote for McClellan who had not registered, and that others had been permitted to vote more than once for McClellan. There are 1,948 election districts in the city, as to which these general charges of errors, or of fraud, would apply. Upon the application of the defendant, McClellan, the attorney-general was required to serve a

bill of particulars of the allegations of the complaint. There was no opposition to the order and there was no attempt at compliance with its requirements. Subsequently, upon an application to preclude the attorney-general from giving any evidence in support of the allegations, as to which he had been ordered to serve a bill of particulars, an order was made, directing a bill of particulars to be served by a certain date and that, in case of default therein, the plaintiffs would be precluded from giving their evidence. A bill of particulars was, then, served, wherein the attorney-general specified a certain number of election districts and, opposite to each, gave the number of ballots, which were claimed to have been miscounted. Thereafter, a further application was made that the plaintiffs be ordered to more fully comply with the previous order; which application was denied. The Appellate Division has reversed this order and has granted the application, to the extent of precluding the plaintiffs from giving any evidence of fraud, error, omission or mistake, as charged, except with regard to the election districts specified in the schedule of the bill of particulars.

The granting of the order in question was in conformity with the provisions of section 531 of the Code of Civil Procedure. That section provides that the court may " direct a bill of particulars of the claim of either party to be delivered * * * and in case of default the court *shall* preclude him from giving evidence of the part or parts of his affirmative allegation of which particulars have not been delivered." The effect of the statutory provision is to leave it entirely discretionary with the court, in which the trial is to be had, whether to order a bill of particulars in a case; but, if the order is made, compliance is compelled by the command to preclude the giving of any evidence as to the particular allegations involved, in the case of default. With the exercise of the discretion of the court below, this court may not interfere. (*Dwight* v. *Germania Life Ins. Co.*, 84 N. Y. 493.) Clearly, the order called for nothing except what may be presumed to be within the knowledge of the attorney-general. Presumably,

that officer, in bringing this action to oust the present incumbent of the office of mayor of New York, because of fraud, or errors, in the conduct of the election, or in the returns of the votes cast, acted upon information received and was possessed of some facts; else, his action was highly improper and unwarrantable. It was manifestly proper, and necessary to the attainment of justice, that he should be made to state with particularity such facts as justified his claim. The defendant was entitled to know what facts in each election district had affected the result of the balloting therein and the particular respects in which the law had been violated. He ought not to be obliged to come to trial upon the general allegations that, in every one of the 1,948 election districts of the city, there were committed errors, or frauds. For the conduct of elections, the statute has made provision, as to officials and clerks, and as to the methods of procedure for the prevention of frauds, or errors, in the casting, or counting, of ballots and in the making of the returns of the election. The defendant holds a certificate of his election received from the officials, whose duty it was to declare and certify the result of the election. It would, in my opinion, be highly unjust if his title to the office, presumptively good in law, could be assailed and he be compelled to come into court to try the question of title upon merely general assertions of fraud and error. It would be intolerable if the attorney-general, acting upon his own initiative, or if any defeated candidate for office, may maintain such an action upon a general averment that a candidate other than the certified incumbent of the office had been elected and that the result of the election was brought about by fraud, error or mistake in every election district. If the rule were otherwise than as stated by the Appellate Division, it becomes possible to throw the result of any election, state or local, in doubt upon vague and wholesale assertions. It would tend to encourage the maintenance of such actions and to the creation of a spirit of unrest.

I think that the decision of the Appellate Division, that the plaintiffs should be precluded from giving evidence upon

the trial, except with regard to the election districts specified in their bill of particulars, was right and an exercise of a wise discretion.

As to the other question certified, "whether in such an action any ballot box may be opened and its contents recounted, without preliminary evidence tending to show some misconduct, error, omission, or fraud in the counting, or canvassing of the vote, or in the returns", I think that the question is not one, which should be addressed to this court. That question, as well as another one, as to where shall rest the burden of proof upon the trial, are requests for statements by this court as to what rulings shall be made upon the trial of the action. This court has no original jurisdiction. Its jurisdiction, as prescribed by the Constitution of the state and by the statute, is limited to the review of questions of law. There is no warrant in the law for the submission by the court below to this court of its doubts as to what rulings should be made in prospective trials of actions. There is neither reason, nor propriety, in assuming to advise the trial court how to proceed with respect to the opening of ballot boxes and to the recounting of the ballots. The competency, or relevancy, of the evidence, offered as a foundation for causing such an examination, are for the trial court to pass upon. If errors are committed, they can be reviewed upon the appeal from the judgment. That the case is of undoubted importance furnishes no reason for this court to assume a function, which, in a less important case, it would unhesitatingly declare improper to exercise.

CULLEN, Ch. J., WILLARD BARTLETT and CHASE, JJ., concur with HAIGHT, J.; VANN and WERNER, JJ., concur with GRAY, J.

Ordered accordingly.