Matter of Kosmider v Whitney (2018 NY Slip Op 02517)





Matter of Kosmider v Whitney


2018 NY Slip Op 02517


Decided on April 12, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 12, 2018

524876

[*1]In the Matter of BETHANY KOSMIDER, Respondent,
v
MARK WHITNEY, as Commissioner of the Essex County Board of Elections, Respondent, and ALLISON McGAHAY, as Commissioner of the Essex County Board of Elections, et al., Appellants.

Calendar Date: January 10, 2018

Before: McCarthy, J.P., Devine, Aarons, Rumsey and Pritzker, JJ.


Law Offices of James E. Walsh, Schenectady (James E. Walsh of counsel), for Allison McGahay, appellant.
Daniel T. Manning, County Attorney, Elizabethtown, for William B. Ferebee, appellant.
Law Office of Daniel R. Novack, New York City (Daniel R. Novack of counsel), for Bethany Kosmider, respondent.
James E. Long, Albany, for Mark Whitney, respondent.


Pritzker, J.

MEMORANDUM AND ORDER
Appeal from a judgment of the Supreme Court (Auffredou, J.), entered January 25, 2017 in Essex County, which, among other things, granted petitioner's application, in a proceeding pursuant to CPLR article 78, to annul a determination of respondent William B. Ferebee denying petitioner's Freedom of Information Law request.
The dispute before us poses a question of public significance: whether electronic images [*2]of ballots cast in an election are accessible under the Freedom of Information Law (see Public Officers Law art 6 [hereinafter FOIL]). We conclude that, once electronic ballot images have been preserved in accordance with the procedures set forth in Election Law § 3-222 (1), there is no statutory impediment to disclosure and they may be obtained through a FOIL request.
Our analysis is informed by the advent of electronic voting in New York (see generally Election Law § 7-202 [4]). As more fully set forth in the record, upon inserting a ballot into an electronic voting machine, it is scanned and an image of it is stored in a random fashion on portable flash drives, which preserve the secrecy of the ballot. The original ballot is then deposited by the scanner into a secure ballot box under the machine. After the polls close, the machine prints out a tabulated results tape containing the official record of votes cast on that particular machine. One of the flash drives is removed from the machine and returned to the applicable board of elections, while the other remains with the machine and is used during the recanvass process. As is relevant here, the content on the portable flash drives is then copied to permanent electronic storage media, such as a hard drive, after which the temporary storage media may be reused in another election.[FN1]
Following the November 3, 2015 general election, petitioner requested from the Essex County Board of Elections (hereinafter the Board) copies of the electronic ballot images recorded by the voting machines used in that election. Respondents Mark Whitney and Allison McGahay, the two Commissioners of the Board, were divided on whether to provide petitioner with the ballot images and referred the request to the Essex County Attorney, who was also the Essex County FOIL officer [FN2]. The Essex County Attorney denied petitioner's request, and petitioner thereafter appealed to respondent William B. Ferebee, the Chairperson of the Essex County Board of Supervisors. In March 2016, Ferebee denied the appeal, concluding that Election Law § 3-222 (2) specifically exempted the requested materials from disclosure.
Petitioner commenced this CPLR article 78 proceeding in June 2016 seeking, among other things, to annul Ferebee's determination and to obtain the requested materials pursuant to FOIL. Whitney submitted an affidavit in support of the petition, and McGahay and Ferebee separately joined issue. Supreme Court, in a well-reasoned and thorough decision, determined that the requested documents were not specifically exempt from disclosure under Election Law § 3-222 and ordered release of the electronic ballot images and cast vote records from the election. McGahay and Ferebee now appeal.
Initially, we find no merit in McGahay's contention that the proceeding was untimely commenced. Petitioner did not seek relief under either article 8 or article 16 of the Election Law, therefore the limitations periods contained therein are inapplicable. Instead, the proceeding was timely commenced within four months of Ferebee's March 2016 determination (see CPLR 217 [1]; Matter of Garcia v Division of State Police, 302 AD2d 755, 756 [2003]).
Turning to the heart of the dispute, agency records are presumptively available for inspection and copying under FOIL "in accordance with the underlying 'premise that the public is [*3]vested with an inherent right to know and that official secrecy is anathematic to our form of government'" (Matter of Madeiros v New York State Educ. Dept., 30 NY3d 67, 73 [2017], quoting Matter of Fink v Lefkowitz, 47 NY2d 567, 571 [1979]; see Matter of Data Tree, LLC v Romaine, 9 NY3d 454, 462 [2007]). As relevant here, the agency bears the burden of demonstrating that the requested records are specifically exempted from disclosure (see Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d 562, 566 [1986]; see also Matter of Friedman v Rice, 30 NY3d 461, 475 [2017]). Under this framework, FOIL is to be "liberally construed and its exemptions narrowly interpreted so that the public is granted maximum access to the records of government" (Matter of Buffalo News v Buffalo Enter. Dev. Corp., 84 NY2d 488, 492 [1994] [internal quotation marks and citations omitted]). While a statute need not expressly state that it is intended to establish a FOIL exemption, there must be a "clear legislative intent to establish and preserve confidentiality" (Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d at 567; see Matter of M. Farbman & Sons v New York City Health & Hosps. Corp., 62 NY2d 75, 81 [1984]).
We begin our analysis with the premise that there are two implied, yet limited, FOIL exemptions encompassed within Election Law § 3-222 (1) and (2), neither of which shield the requested records from full public disclosure [FN3]. As relevant here, Election Law § 3-222 (1) states: "Except as hereinafter provided, removable memory cards or other similar electronic media shall remain sealed against reuse until such time as the information stored on such media has been preserved in a manner consistent with procedures developed and distributed by the state board of elections" (emphasis added). Although this language does not address public access to the unpreserved information stored on portable electronic media, such as a flash drive, accessibility is addressed in the very next sentence, which states, as relevant here, "[p]rovided, however, that the information stored on such electronic media and all the data and figures therein may be examined upon the order of any court" (Election Law § 3-222 [1] [emphasis added])[FN4]. We interpret "[p]rovided, however," following the language "[e]xcept as hereinafter provided," to mean that the requirement of obtaining a court order to inspect information contained on such electronic media applies only prior to preservation, creating a limited implied FOIL exemption during the pre-preservation period. Given that we must construe FOIL exemptions narrowly (see Matter of Madeiros v New York State Educ. Dept., 30 NY3d at 73; Matter of Data Tree, LLC v Romaine, 9 NY3d at 462), it follows that, absent an additional exemption relating to post-preservation data, Election Law § 3-222 (1) does not restrict access to information stored on electronic media — such as the electronic ballot images at issue — once the preservation process is complete and the information has been permanently stored. Accordingly, copies of these permanently stored electronic ballot images, which fall squarely within the definition of agency records under the Public Officers Law (see Public Officers Law § 86 [3], [4]), may be accessed through normal FOIL procedures after the images have been preserved, even absent a court order.
We reject the proposition that Election Law § 3-222 (2) governs this dispute. This [*4]subdivision provides, as relevant here, that "[v]oted ballots shall be preserved for two years after such election and the packages thereof may be opened and the contents examined only upon order of a court or judge of competent jurisdiction" (Election Law § 3-222 [2]). While this subdivision contains an implied FOIL exemption by limiting the circumstances, scope and manner in which voted ballots may be inspected within the two-year period, we read this subdivision as creating a two-year preservation requirement that applies solely to paper ballots. This interpretation comports with the spirit of FOIL and rationally tracks the statutory language referring to "packages" of voted ballots, indicating that the subdivision applies solely to ballots in paper form. Unlike paper ballots, which are manually stored in packages that must be physically opened for inspection and are susceptible to tampering, no such concern is implicated when electronic ballot images have been permanently preserved on a hard drive. That the Legislature carved out different preservation time frames in Election Law § 3-222 (1) and (2) demonstrates an awareness that the preservation procedures differ based upon whether such data is contained in electronic or paper form.[FN5]
Moreover, Election Law § 3-222 does not evince a legislative intent, nor is there any legitimate reason, to protect the confidentiality of anonymous voted ballots. Rather, the statute establishes preservation requirements to maintain the integrity of voted ballots during the election certification process. Indeed, Election Law § 3-222 is titled "[p]reservation of ballots and records of voting machines" (emphasis added), and the fact that a party may examine the paper ballots by obtaining a court order within the two-year preservation period demonstrates that the Legislature was not concerned with confidentiality. The restrictions contained in the statute merely dictate how and when voted ballots may be accessed and do not operate as blanket FOIL exemptions.
The dissent's conclusion that Election Law § 3-222 permits the inspection of voted ballots only in cases of election disputes or in the prosecution of crimes related to an election ignores the fact that examination of the original paper ballots was never sought, and the standard espoused by the dissent, right or wrong, is simply not before us. Moreover, access under FOIL "does not depend on the purpose for which the records are sought" (Matter of Gould v New York City Police Dept., 89 NY2d 267, 274 [1996]). Inasmuch as the statute does not evince a legislative intent to preserve confidentiality, and because Election Law § 3-222 (2) does not govern the dispute, the electronic ballot images are presumptively accessible under normal FOIL procedures after the preservation process set forth in Election Law § 3-222 (1) is complete. Accordingly, the agency failed to meet its burden of proving that the requested materials are exempt from disclosure under FOIL.
McCarthy, J.P., concurs.




Aarons, J. (concurring).


I agree that copies of the electronic ballot images from the November 2015 general election in Essex County must be disclosed to petitioner. However, I would affirm the judgment for different reasons than those stated by the majority and, therefore, I respectfully concur.
Inasmuch as petitioner is seeking copies of agency records, this case is controlled by the Freedom of Information Law (see Public Officers Law art 6 [hereinafter FOIL]) — a point not contested by the parties. Under FOIL, the public is provided with "broad access to the records of government and an agency must make available for public inspection and copying all records unless it can claim a specific exemption to disclosure" (Matter of Friedman v Rice, 30 NY3d 461, 475 [2017] [internal quotation marks, brackets and citation omitted]; see Matter of Hearst Corp. v New York State Police, 132 AD3d 1128, 1129 [2015]). In denying petitioner's FOIL appeal, respondent William B. Ferebee, the Chairperson of the Essex County Board of Supervisors at the time, stated that Election Law § 3-222 exempted the requested information from disclosure and that the requested materials could not be produced without a court order.
In my view, Election Law § 3-222 does not create a FOIL exemption given that it does not concern the confidentiality of voted ballots. Rather, this statute concerns the preservation of them. By setting forth specific time and disclosure restrictions and requiring a party to obtain a court order in certain situations, the statute seeks to protect the integrity of the voted ballots. Moreover, the fact that this statute permits an examination of voted ballots and allows a board of elections to dispose of them after a certain time period indicates a lack of intent by the Legislature to shield voted ballots from the public eye (see Election Law § 3-222 [2]). As such, Election Law § 3-222 does not specifically exempt the requested copies of the electronic ballot images from public access.
Although Election Law § 3-222 does not constitute a FOIL exemption, it nonetheless delineates the circumstances in which voted ballots may be accessed and disclosed. As relevant here, Election Law § 3-222 (2) states: "Voted ballots shall be preserved for two years after such election and the packages thereof may be opened and the contents examined only upon order of a court or judge of competent jurisdiction." The majority concludes that only paper ballots are controlled by Election Law § 3-222 (2) and that electronic ballots are separately governed by Election Law § 3-222 (1). In contrast, Ferebee reads Election Law § 3-222 (2) as applying to both electronic and paper ballots and, therefore, a court order is necessary to obtain them during the two-year preservation period, and that, at most, only an examination of them is permitted.
In my view, it is unnecessary at this juncture to determine whether the Legislature created separate and distinct circumstances with respect to the review of electronic ballots and paper ballots. In this regard, even if Ferebee was correct in the interpretation of Election Law § 3-222 (1) and (2), the requirement that a party obtain a court order to access the voted ballots applies only in the two years following the election when they must be preserved. Indeed, as Ferebee noted when deciding petitioner's FOIL appeal, upon the expiration of the two-year preservation period, the requested information could be disclosed without a court order. Because over two years have passed since the November 2015 election, a court order is no longer required at this time. It is for these reasons that I believe petitioner is now entitled to disclosure of the requested copies of electronic ballot images.




Rumsey, J. (dissenting).


We dissent on the basis that access to the copies of the electronic ballot images is governed exclusively by Election Law § 3-222 and, therefore, they are exempt from disclosure [*5]under the Freedom of Information Law (see Public Officers Law art 6 [hereinafter FOIL]). Inasmuch as petitioner did not make the showing required by Election Law § 3-222 to obtain access to the requested information, we would reverse and dismiss the petition.
Under FOIL, an agency may deny access to records that "are specifically exempted from disclosure by state or federal statute" (Public Officers Law § 87 [2] [a]). A state statute need not expressly state that records are exempt from disclosure under FOIL so long as that intent is clear (see Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d 562, 567 [1986]; Matter of M. Farbman & Sons v New York City Health & Hosps. Corp., 62 NY2d 75, 81 [1984]; Matter of Wm. J. Kline & Sons v County of Hamilton, 235 AD2d 44, 46 [1997]). Notably, Election Law § 3-222 provides, as relevant here, that a court order is required to permit examination of the voted ballots or of electronic images of those ballots that are temporarily preserved on the removable memory cards or other similar electronic media, and nothing in Election Law § 3-222 (1) or (2) authorizes public release of voted ballots. Moreover, where, as here, a statute requires that a prior court order be obtained to access information, a special proceeding must be commenced to obtain the court order, and determination of whether to grant the order will be made in accordance with the standards established by the statute (see e.g. Matter of Diaz v Lukash, 82 NY2d 211, 215 [1993]). Notably, in Matter of Diaz — decided 16 years after FOIL was enacted and construing a statutory provision that pre-dates FOIL — the Court of Appeals implicitly held that FOIL was inapplicable where, as here, a statute provides more specific standards governing release of information and requires that a prior court order be obtained (id.).
Additionally, the requirement of a court order begs the question of the standards to be applied by a court when determining whether to issue an order permitting examination of the ballots. By setting forth specific time and disclosure restrictions and requiring a party to obtain a court order in certain situations, Election Law § 3-222 seeks to protect the integrity of the voted ballots and delineates the circumstances in which voted ballots may be disclosed. In that regard, Election Law § 3-222 orders preservation of original ballots and permits examination thereof only for the purpose of resolving election disputes or as evidence in criminal prosecution of crimes related to an election (see People v McClellan, 191 NY 341, 348-351 [1908]; see also Election Law § 16-112; 50 NY Jur 2d Elections § 712)[FN6]. This conclusion is also apparent from the fact that the statute authorizes examination by a committee of the Senate or the Assembly only for the purpose of investigating contested elections of members of the Legislature. Thus, the logical standard to be applied is whether the records are sought for a legitimate purpose related to an election dispute. Here, even if we were to consider the request within the context of the pending FOIL proceeding (see e.g. Matter of Pennington v Clark, 16 AD3d 1049, 1050 [2005], lv denied 5 NY3d 712 [2005]), the petition must be dismissed because petitioner failed to make any showing of entitlement to examine the copies of the voted ballots by not specifying that access was being sought for a permissible purpose.
We disagree with the majority's conclusion that the requirement that a court order be [*6]obtained to view electronic images of the voted ballots, imposed by Election Law § 3-222 (1), automatically ceases when the data is merely copied from the temporary storage devices. Preservation and examination of the information contained on temporary storage devices, i.e., images of the voted ballots, are governed by subsection (1) of Election Law § 3-222, and preservation and examination of the voted ballots are governed by subdivision (2) of that statute. The
subsections logically contain identical provisions limiting examination of the relevant information or ballots, as relevant here, only by court order. Therefore, it is our view that following preservation, access to such images is governed by subdivision (2) because the preserved images are merely electronic copies of the voted ballots. The conclusion that a party may have access to electronic images of the voted ballots without a court order when a court order is required to view the actual paper ballots is an illogical interpretation of the statute that should be avoided (see Matter of Long v Adirondack Park Agency, 76 NY2d 416, 420, 422-423 [1990]). To illustrate, it is likely that the data that is initially contained on the temporary storage devices is often permanently preserved shortly after the election. Under the majority's view, a party would have nearly immediate access to electronic images of the voted ballots long before expiration of the two-year period during which a court order is unquestionably required to obtain access to the actual voted ballots. Finally, inasmuch as the proceeding was commenced, and the order was entered, within the two-year preservation period, we would not address disclosure of the records following expiration of that time period. For the foregoing reasons, we would reverse and dismiss the petition.
Devine, J., concurs.
ORDERED that the judgment is affirmed, without costs.



Footnotes

Footnote 1: There is nothing in the record indicating that these procedures were not followed in this case.

Footnote 2: Although petitioner's request was not formally denominated a FOIL request, it was treated as such by the Essex County Attorney.

Footnote 3: In conducting our analysis, we also note that the record contains an advisory opinion from the Committee on Open Government that concludes that electronic ballot images are accessible under FOIL and are not specifically exempt under Election Law § 3-222 (see Comm on Open Govt FOIL—AO—19107 [2014]).

Footnote 4: This information also "may be examined at the direction of a committee of the senate or assembly" (Election Law § 3-222 [1]).

Footnote 5: The dissent's assertion that it is illogical to allow FOIL access to electronic images of voted ballots when a court order is required to view the paper ballots fails to account for important distinctions between unpreserved and preserved records. This assertion does not reflect our position that prior to preservation, a court order is necessary to inspect both paper ballots and electronic images thereof, but, after preservation, FOIL controls the analysis. 

Footnote 6: People v McClellan (supra) remains instructive even though it predates the enactment of FOIL in 1977. It has not been abrogated by the Court of Appeals or by the Legislature. Neither the original statute nor any of the subsequent six amendments specifically contravenes McClellan or contains any provisions that otherwise indicate any intent to ease or expand access to voted ballots.